Good afternoon, Illinois appellate court 1st district court is now in session. The 6th division, the honorable justice, Carl, a Walker presiding case. Number 2, 4 dash 1, 3, 6, 8 people versus Angelo Evans. Good afternoon everyone. I am justice Walker and I have here with me today. Just as Michael be Hyman and just to sell your camera. And I'd like to start by asking each of you to introduce yourself. We'll start with the appellant. Good afternoon. My name is and McClennan and I represent represent the appellant Angelo Evans. Okay, and Ms. McLennan, do you have 20 minutes to argue? Did you want to save any time for rebuttal? Yes, please 5 minutes for rebuttal 5 minutes. You've got it. And Ms. Mac going, yes, Amy McGowan for the people. Okay, thank you. Ms. McGowan, you will have 20 minutes also. Thank you. Okay, with that, Ms. McLennan, we will have you get started. Thank you. Angelo Evans was sentenced to 90 years in prison for an offense he committed when he was 17 years old. This court already remanded for resentencing and the same exact 90 year sentence was reimposed. We've read the briefs and the record and the additional authority. I'd like to start with the state's additional authorities that they have filed several cases. What's your response to that? Okay, so most of the cases, except for Massey were homicide cases. So I think because we have Graham v. Florida, which addresses non homicide juvenile offenders. I think that separates this case from those cases that just address homicides because under Graham, there must be a meaningful chance of release for a juvenile offender who is a non homicide offender. And let me ask you about that. This gentleman was sentenced. He's eligible for parole. Correct. Correct. And is it still the day for day credit where there is a likelihood that he will be out in a total of 45 years, not 90? That's correct, Your Honor. So with day for day credit under Dorsey, he is eligible for release after 45 years, but it's still a de facto life sentence under buffer because it's over 40 years and he doesn't have a meaningful chance of release under the Illinois parole statute. Why is that? Is that because you disagree with parole statute? And that's because you think that the system in Illinois is not meaningful? It's not just that I disagree with the parole statute, but under Illinois parole statute, the board can deny parole even if the defendant shows the greatest maturity and rehabilitation. But under Graham, which addresses non homicide, juvenile offenders, the release is supposed to be based on demonstrated maturity. And rehabilitation. So, and even though the parole statute says that the board is supposed to consider the diminished culpability of youthful offenders, it can still deny parole for any reason. So, using that argument, if I mean, we have to accept your proposition that our parole system is meaningless because otherwise, what does our sentences of, you know, X amount of years with parole mean with eligibility for parole? You're saying to us that whether it's with or without in Illinois doesn't matter because of parole statute in Illinois is meaningless. Am I understanding that to be your argument? I don't think you have to say it's fine that it's meaningless overall, but I think for Angelo, who's a juvenile non homicide offender, it doesn't grant him a realistic chance of release. And I think why is he different than any other offender? He did get 90 years. He's eligible for release and 45 and he gets if I'm not mistaken, I think 2 opportunities to apply for parole. Correct 1 of which he's eligible to do as we sit. Yes, yes. So there's a few things that I want to point out. So, 1st of all, sentence length is the board. The parole board is supposed to consider sentence length as aggravating, which is 90 years here. So, it's a really long sentence sex offenders that the board is also supposed to consider that there's no judicial review. And then if you look at the Illinois statute, it's more restrictive than other states, which is going to affect a juvenile more than an adult. Because when you look at the community consensus and you compare it, the juvenile who has a longer time to wait in Illinois and then less repeat chances, only these 2 chances, is going to have less chances overall than, let's say, a system like Wyoming where you can keep applying or Florida where you can keep applying. So, the juvenile is going to spend longer, a longer time in jail because but isn't the real issue here that this matter was remanded to the trial court for resentencing and you are arguing that the trial court, there were several factors that the trial court failed to consider. So, why don't you walk us through those factors that the trial court failed to consider? Thank you, Your Honor. I will. So, the trial court was supposed to consider the juvenile sentencing statute, which is under Section 4.5-105A. And at the time, the General Assembly had enacted two versions of the statute. One had nine factors, one had 12 factors, and they weren't conflicting. One had more factors. So, the court was supposed to consider them together, and the court didn't. The court stated on the record that it was considering nine factors. These additional factors, well, for Factor 3, there was the addition of domestic. Well, we know what that is, but I mean, what about the argument that the state makes that implicitly the court considered the additional three factors? Well, I would say a few things. First of all, the statute requires that the judge's Section B of the statute requires that the judge specify on the record it's consideration of all the factors under Subsection A. So, the statute itself doesn't allow implicit consideration. And then when she's explicitly saying to the judge that she's considering the nine factors, you can't then just speculate that, oh, she must have considered the 12 factors when she didn't. She explicitly said on the record that she was considering the nine factors. And she even labeled them 1, 2, 3, 4, 5, 6, 7, 8, 9. Exactly, exactly. So, where was defense counsel when this was happening? I know defense counsel sent a memo that said 12 factors, argued 12 factors, when the judge said nine. Was there any objection? Was there a discussion? And then, quite frankly, I'm a little confused as to how the legislature had two versions of the statute. If you want to talk about that a little bit more, was that they seem to have overlapped, one lasted until June 30th of 2024, which sentencing occurred 10 days before that, and one started January of 2024. Just help me understand. So, I'm not sure why the General Assembly enacted these two versions, but I think what's important is that the latest version is the 12 factor statute. So, that was the intent of the legislature for the courts to consider all 12 factors with Section B that requires them to address all of the factors, its consideration of all the factors on the record. And then, as far as defense counsel, I would agree. Where was defense counsel? Defense counsel was ineffective in not correcting the court when the court specifically noted that the court was considering these nine factors. And I think it's important here because these specific factors were mitigating in this case. They apply to Angelo. And one of the factors, the court, one of the factors was Factor 11 that dealt with a mental health evaluation, and the court actually got that factor wrong. She didn't specifically consider it, but then when she was discussing something else, she said that he was never diagnosed with a psychiatric or neurological disorder, but that's contrary to the record. He spent time in psychiatric hospitals. He was diagnosed with depression and post-traumatic stress disorder. Dr. Cummins, the mitigation specialist, testified that he had fetal alcohol spectrum disorder, and he had documented suicide attempts and was prescribed psychotropic medication. So, not only did she not consider the full 12 factors, but she also got the factors wrong in some instances. Another factor that she overlooked was the addition of the factors to number three, domestic or sexual violence, sexual exploitation, or adverse childhood experiences. And these mitigating factors that were not acknowledged by the judge, but Angelo did experience sexual violence in the group homes. He did have scars all over his body. Someone broke his arm in a group home. So, these were mitigating factors that the court overlooked. Another important one was the factor nine, child welfare involvement. That wasn't meaningfully addressed by the court. She did say that he had a childhood that no child deserves, but that doesn't mean that could be a general thing. Here, he's growing up in group homes and psychiatric hospitals. And what's important here, though, is that she overlooked these factors, but these factors are mitigation that shows that he had instability that affected his or delayed his brain development and impaired his decision making. So, that's why this matters under Graham and Miller and all of the following cases. These factors aren't just there to let's feel bad for Angelo. These factors affected his brain development when he committed this offense as a juvenile. Why should we send it to a different judge? You've asked us to do that. Prejudice, bias. I think you can look at the concurrence in People v. Class for some direction on that. I think you can say that she didn't follow the mandate, first of all. It was remanded for consideration under Graham and Buffer and the juvenile sentencing statute. She didn't consider all of the factors under the juvenile sentencing statute. So, she didn't follow the mandate and there was a potential. She even said she went so far as to say maybe she didn't even have to follow those cases. She didn't think this case came under it, right? Well, let me ask about that, counsel, because isn't that where Spencer comes into play? I mean, was she right on that? She said this is taken out of the realm of Buffer because he was sentenced with parole, so it's not a de facto life sentence. She considered it. She mentioned Buffer. She knew what she was supposed to do, but she said we have somebody with parole, so it's not a de facto life, and Spencer indeed says that, right? Well, Spencer says that. And Massey certainly doesn't. I agree. Massey does say that, and you would have to find that Massey was wrongly decided, and I think you can do that because Spencer involved an emerging adult who was 20 years old, not a juvenile. It was a homicide case, and Graham tells us that non-homicide offenders are categorically different than those who kill, so Spencer addresses a different situation than this case. Angelo has an Eighth Amendment right, which differs from the defendant in Spencer who didn't because he wasn't a juvenile. Sure, but you're asking us to take this case away from a judge saying there's bias and prejudice. There is actual case law, appellate court case law, that supports exactly what she did, so can you really call that bias and prejudice such that we should take this case away from a judge on remand? Well, the issue of exactly what you have to prove to reassign the judge is pending in People v. Farrell-Morris right now, which is why I would point to the concurrence in class and lean more towards she did not follow the mandate, so there is the potential for prejudice. And just to note, she imposed the same exact sentence that was imposed in the 1990s before the advent of all of this brain science, before the advent of Miller-Graham. This is the maximum sentence before all of this mitigation, and she imposed the exact same sentence, even though it was remanded. You just said one of the more important points, and maybe you should expand on that. You mentioned mitigation. I mean, even the judge, when he imposed the 90 years, said he didn't think anything about rehabilitation in the future, right? And now we know, for the last 20 years, he's been on excellent behavior. He's done all these things. He's not the most secure president, but a medium secure president, I believe, and he's even got an organization that wants to take him under their wings if he's released. So there's a lot going on here that just didn't make it into the decision, since it appears to be more in line with what happened at the original sentencing than in line with what's happened since then, which is what we're supposed to be looking at. Isn't that true? Well, you can consider the mitigation and the aggravation. I mean, you should consider the mitigation. I'm not saying we don't consider the aggravation. She did that.  But what you were talking about was mitigation, and it seems that this case stopped in 2006 with regard to mitigation, and anything since then, I didn't see that much about it in her decision. Yes. I mean, this shows Miller and Graham in action, because he did stop getting the tickets in 2006. He has rehabilitated himself. He has been moved to a medium security prison. He has had increasing amounts of responsibility given to him in prison. So, yes, absolutely. He has shown that he's rehabilitated and shown that the offense was due to the transient qualities of youth. I see my time is going. Are you arguing that the trial court gave the same 90-year sentence because the trial judge failed to consider all the factors and had the trial court done that, there may have been a different outcome? Yes, but also the factors that she did consider, she didn't fully consider all the factors. So, she left some out and then didn't appropriately apply the remaining factors. And the outcome may have been different, fully considering everything. You believe that that, based upon your argument that we should assign this to a new judge, you believe that there was some predisposition there? Yes, the potential for bias. Yes. Is that the standard potential for bias? Well, it is pending right now before the Illinois Supreme Court, but People v. Class does talk about the potential for bias, and especially the concurrence, talking about the potential for bias if the mandate isn't followed. If there are not any. You still have five minutes for rebuttal. I'm sorry, I didn't hear what you said. Oh, I said Ms. McGowan, you're up. Okay, go ahead. Assistant State's Attorney Amy McGowan for the People. May it please the court. The crux of defendant's entire first argument requires him to have received a de facto life sentence, and Spencer says he didn't. Defendant claims that Spencer doesn't address Eighth Amendment issues, but that's simply not true. And we can tell that by looking at the issue presented, Spencer's reasoning, and subsequent interpretations. Why should we treat a juvenile, which Spencer was not, with Constitution protections under Graham the same as we would an emerging adult? So, in Spencer, the court noted that while Miller doesn't directly apply to young adults or those over 18, these emerging adults, like Spencer, who claim that based on their specific facts and circumstances are more akin to juveniles, can receive Miller protections based on Miller case law and the science underlining Miller's reasoning. So, for young adults, they have to show that based on their specific facts and circumstances, they're more akin to a juvenile. And once they do, if they do, then they're subject to Miller protections. But that's a lot different issue. Because somebody over the juvenile may or may not be like a juvenile, because you just said you have to prove it, right? But a juvenile does not have to prove it. And what we have here is a juvenile. So, there is a direct bar between those two. Juveniles are not treated like emerging adults. And that's what you're saying. It's a different standard and everything. So, I still don't see why Spencer would have any applicability in this situation. I'm saying that that was the hoop that young adults have to jump through first to entitle them to Miller protections. The Spencer court wasn't saying he didn't do that. The Spencer court said he simply didn't receive a de facto license. Again, it's him. It's not our case here. We have a juvenile. There's no doubt about it. There's no hoops he has to go through. It's a different standard. You're trying to say that that case somehow relates to this, but they're different, extremely different situations. And to equate the two, what gives you the basis to equate the two that an emerging adult in that situation would be like a juvenile? I mean, the court didn't say that. And no court has said that hasn't been reached by the Supreme Court, put it that way. Well, let me start with this. Your honor, the house Spencer reached its conclusion. It's reasoning. It relied on people be Dorsey, which you're aware is a juvenile case and the court and Dorsey determined that the eligibility for day for day credit provided meaningful opportunity for release. The court and Spencer then relied on people be dough, which is an unpublished decision from this district, which said that another juvenile case, the juvenile sentence is constitutional claim had to fail because he simply did not receive a de facto life sentence because he was eligible for parole. So the Spencer court quoted and relied upon Dorsey quoted and relied upon dough, which are both juvenile cases. It then cited with approval Cavazos and Beck, which are other first district cases involving juveniles, a 14 and a 17 year old. Where this court has found that the eligibility for parole precludes them from receiving a de facto life sentence. So those are some reasons that I think it can be interpreted that Spencer did not limit and does not solely apply to juveniles when it quoted and relied upon juvenile case law and reaching its decision. And back to my point about the young adults raising the Miller claim. Actually, Your Honor, when people be buffer was decided young adults were attempting to say that it didn't apply to them that buffer applied only to juveniles. This the Supreme Court and people be Clark said that's not true. It said that once a young adult makes his Miller case that puts him in Miller territory like he gets Miller protections once he proves that his facts and circumstances make him more akin to a juvenile. And that's what Spencer was doing. So Spencer's entire reasoning was grounded in Eighth Amendment principles. And another way you can tell that Spencer isn't limited to just young adults is no courts are interpreting it that way. The cases that I cited my motion for additional authority apple white walls briscoe it. They automatically applied it. Spencer just said that if you're eligible for parole, you are not serving a de facto life sentence. But every single one of them is a rule 23. None of them are there for the principles that they talk about, which is kind of odd, isn't it? Well, Spencer came out. This was such a decided issue, or isn't it? I mean, I don't know. They didn't make it an opinion. Spencer came out recently. It was after defendants initial brief. In fact, so while they're just authority, the question posed is, you know, how do we interpret and this is persuasive on how Spencer should be interpreted. Like I said, looking at all of these considerations that counsel mentioned, what the parole board can consider, can consider how many opportunities defendants have. This was all presented to the Spencer court, the Supreme Court. So here, though, Miss McGowan here, though, he was sentenced to 90 years. Many, many years ago, and we know that now our Supreme Court is basically taking position and buffer that anything over 40 years is inappropriate for juveniles. So should now what the trial court judge has done is the trial judge has resentenced him to 90 years. So should we at least send it back so that it's in compliance? Your Honor, it is in compliance with the mandate. If you look at what was decided. So in defendants successive post conviction petition, he challenged his sentence. It was dismissed and that dismissal was affirmed on appeal. This court said that because he received 45 years, that was not de facto life. Now, that was pre buffer. That was in 2017. This court just rejected it. Say 45 years is not de facto life. Then buffer came out after the fact and said that 40 years is de facto life. So this the court remanded to be in compliance with buffer. Now, when it went back, defendant was eligible to be resentenced and I'm sorry, eligible for parole when he was resentenced. Now he is not serving a de facto life sentence. So that why should that why should that even be a factor considering that that is as a result of delays in the process and and so forth that should should we even allow that to occur? Because. And I had this been done before he reached 37 that wouldn't have been an issue. It's not as if your honor, I'm sorry. It's not as if the court decided not to hold a resentencing and just said, well, now that you're eligible for parole, I'm not going to consider any of these factors. She held a thorough sentencing. I mean, how can you say thorough? I mean, you have you already concede that she used around statute, right? Yes, your honor. And the legislature said you have to go through each of the 12 factors one by one, which she didn't do. She missed them. So how could how could we not just send this back in that the wrong statute was applied the wrong factors? Well, your honor, as counsel noted, there were two statutes in effect at the time. Yes, she was looking at the nine and not the 12. However, the sentence sentencing hearing took place over two to three days. I think it was a multi day hearing. So yes, when she gave her ruling. That's the important thing. It doesn't matter how many days it doesn't. The fact is the law said 12. She did nine. It's a matter. We have to enforce the law. We don't have a choice in that. It's very clear what the legislature said. She used the wrong list of factors. She never got to 12. She didn't specify 12. And not only she didn't specify, she didn't even consider three of the 12. I mean, under their what they're talking about, but it says it. Legislature says they have to, you know, she has to go through them one by one. She didn't do that because she didn't do that. She only did nine. So as a matter in front of us, why should we just send this back to do it right? Because she did not consider all 12 factors specifically and explicitly as required. I have two responses to that, Your Honor. First, respectfully, I don't believe the legislature says she has to go through one by one and can state her consideration of each factor. Subsection B says the court shall state its consideration of the factors, not one by one, not verbatim, not which factors it found present or absent. Now that I think it's unclear. Shall state? What's that mean? Can the court just say, I've considered the section 105 factors? But they're supposed to consider each factor. That's why she went down one, two, three. She did that on purpose. There was a reason for that, right? That also, that's not in the nine factor statute. So if she was looking at the nine factor statute, nothing in there tells her to number them one by one. But she did. And we know, you've already conceded she didn't do the 12. So, you know, you can't have it both ways. No, I'm conceding that she didn't specify 12. I'm saying nothing, the statute, nothing tells a judge that they have to recite 12 factors verbatim. Well, they can skip factors and we're supposed to know what's in their mind. Well, Your Honor, some, this wasn't an issue. In the brief, but yes, there are there are some cases that say they're not in the brief. So you haven't made that argument. Ms. McGill, let me ask you, this statute, there were two statutes in effect. So she correctly followed one of the statutes that was in effect, but there was a second statute in effect simultaneously with that. This is what I'm understanding. And everybody concedes that it, that that's more robust. There's three additional factors and somehow that got lost in translation. They argued nine defense counsel said there were 12, but when the judge said there's nine, like, nobody spoke up. And it really wasn't the issue itself was not discussed in the record. What was going on at that point in time? Was there confusion over these two statutes? Your Honor, I couldn't speak to that. I wasn't there at the time. I don't know how two statutes were in existence at the same time. Like you said, there is, like you had mentioned, defense counsel did argue all 12. So the court had heard that. But yes, when she read or was giving her ruling, she did read from the nine factor statute. But Miss McGowan, you agree that there are 12 and you agree that a trial court judge should consider 12. Correct? Yes, Your Honor. Okay. But my as I stated in the brief and I'd like I'd like the chance to say now, I think the record is clear that she gave due consideration to these factors. When the court considered defendants family, home environment, educational, social background, including any history of parental neglect, physical abuse or other childhood trauma. She did consider the defendants involvement in the child welfare system, as well as the addition of any domestic or sexual violence. All of this information was presented to the judge by Dr. Cummins, either via testimony or. But that's not the issue. The issue. Let me read the statute. The trial judge shall specify on the record its consideration of the factors under subsection A of this section. Specify on the record. Did she? All 12? She did not specify all 12. No, I don't. And that's what the statute says. Shall. Shall is not. It's not discretionary. Shall specify. That's what we're talking about. And why shouldn't we enforce the statute as written? Well, the statute should be enforced. You're correct. The failure to specify the factors, despite having considered them is not plain error. And that's where we are, because defendant didn't raise this at trial. No one said anything to the judge when she was reading the 9 factor statute. No one pointed it out after the fact in a post sentence. Yeah, but counsel had previously counsel for defendant had previously advised that judge there's 12 factors. So the judge then decided to do 9. Right in argument. Yes, in argument, counsel had mentioned addressed each of the 12 factors. Now, when the judge was going through, no one said you didn't say this and and there has to be an objection at sentencing and raised in a post sentence motion. This could have been clarified at the trial court if it was just brought to her attention, but it wasn't not at sentencing and not after the fact. So now we're on appeal determining if this is plain error. And the record shows that she did consider all of these factors while she might not have specified it is the failure to specify plain error. I guess that's where we we may part a little bit because I'm not sure I agree that she specified all 12 factors. I know. I agree that she did not specify all 12 factors. Well, I'm not even sure that you can tell from the record that she even considered all 12 factors. I'm just not sure. I can't tell that from the record. Sure. And as I was stating, Dr. Cummins testified and included in her report that defendant lived in various group homes, residential placements. He was sexually and physically abused as a child. The court explicitly stated that it considered the testimony and the report that it read the report numerous times because it wanted to be thorough. The court discussed parental neglect, his unstable living situations as a child. They discussed how defendant even lived with the victim's grandma for a period of time. You can't say that when the court is considering this, it's not considering that the defendant was in. What you're saying is the court, all of what you just said is under the rubric of the upbringing of Evans, correct? Yes. Everything you just said. But there are two factors. One is three and one is nine. One is looking at the upbringing, which that's three, and nine looks at the environment outside the context of the upbringing. So, I mean, there's one in your upbringing and other things are looked at at nine. They're not the same. Three and nine are different. And she did not do nine according to, that's the argument being raised by the defense. Your Honor, I'm not sure how defendant's involvement in the child welfare system is different than his parental neglect and his child's environment. It's extremely different because it's a separate factor. Not only that, we know what happened when he was in the welfare system. Right. He had a horrendous situation with regard to that and would probably had lots to do with his mental state. Yes, without question. So, yes, it's a very important factor involved and she did discuss it. Horrendous. And I do think she did discuss it. Where did she discuss it? She talked about on 757 and 758 of the record when she's talking about his upbringing, when he was a child involved in the welfare system. Again, they're separate. She all discussed it all within the context of his upbringing, not with regard to that specific different context of outside environment. I mean, that's their argument. I understand you disagree. Yes, I do disagree. Based on her responses, his environment was an environment that no child should ever be subjected to. She said this was not in any way, shape or form a childhood that anyone deserves, including the defendant. And I took all that into consideration. Those are her explicit quotes. If she took the report to consideration, his environment growing up, the different homes, if she took that into consideration, how did she not consider his involvement in the child welfare system? She considered the physical abuse, she said. So to say that that includes the sexual nature of it, that she refused to consider the sexual nature of it, only the non-sexual physical abuse. She considered it all. This isn't a case where information wasn't presented to her or she did a shoddy job. She was very thorough. She stated that she read the report numerous times. She talked of defendant's mental health, and I want to touch on that for a second because I know defense counsel brought it up. The fetal alcohol syndrome, that was never diagnosed. So while Dr. Cummins opined that yes, he suffered from it and perhaps he did, there was no diagnosis and that's in the record. The psychiatric hospitals, I can see, yes, defendant was diagnosed with depression and I believe that is a psychiatric diagnosis. So I would concede that part. However, the court was made aware that he was diagnosed with depression despite having forgotten or mentioned otherwise in its ruling. But, sorry, defense counsel argued that there had been multiple evaluations and quote, he was never treated or diagnosed. He was placed at a psychiatric facility against the recommendations of his doctor and that's on 406 in the record, which is consistent with page 17 of Dr. Cummins report that said when DCFS couldn't find a placement, they sent him to a psychiatric hospital, despite the social worker finding him not an appropriate candidate. Dr. Cummins discussed how defendant was, like I said, never diagnosed with the fetal alcohol syndrome, was never diagnosed with a neurological disorder, that's on 654 of the record, never diagnosed with ADD. These are all things that came up. Ms. McGowan, I want to give you a chance to go ahead and finalize your thoughts and then close out because you're actually out of time now. Thank you and I apologize, Your Honor. But you can finish your argument that you're making now. Based on this record, it is clear that the court gave due consideration to the factors. Granted, they were nine, but she also thoroughly considered everything that was presented to her. Her failure to specify the additional three factors do not amount to plain error. Where did she consider that he had no tickets written up for the last 20 years and everything he did the last 20 years? Where is that in the record? Well, she says that she considered how he hadn't been idle in prison, that she took into consideration the programs he's participated in. She did make those. But 90 years before with no rehabilitation expected and 90 years after considering the rehabilitation in the evidence, you're equating those two? Your Honor, I am and what we're looking at here is I mean, defendant raised two issues that, you know, he's it's unconstitutional because he's serving a de facto life sentence. Spencer says he's not and that the court failed to specify it's finding. I mean, the record is what it is and the court was thorough. If this is if your honor disagrees on either of those issues and remands, I would ask that it go back to the judge. There has been no showing of prejudgment of bias. Defendant doesn't even make such an argument in the brief. It's this argument is limited to one sentence, and it just says it should be remanded based on a post conviction case. So, your honor judge, the judge below did a thorough job, conducted the sentencing hearing, listened, gave thoughtful consideration to all of the factors. Defendant did not receive an unfair sentencing hearing. And for the reasons I've stated today, and those in my brief, I asked that you affirm. Thank you, Miss McGowan and Miss McLean. Thank you. I only have a few brief points. So, first of all, there was some mention of the briefs that say you don't have, or I'm sorry, the cases not in the brief that you don't have to go through all the factors or specify all the factors. Those were all cases. I only found cases that address the nine-factor statute that don't have subsection B that specifically require that you go through all the factors. So, one of them is ringing a bell, people be kindled. It was in the nine-factor statute without the subsection B. That's first of all. My second point is for subsection B, whether you have to go through and specify each factor, which I think you do, and that's why the judge did, she still didn't comply with it if she specifically, affirmatively said, I'm going to go over the nine factors. So, she didn't say on the record, I'm going to go over the 12 factors, and then maybe there's an argument that she did specify everything, but because she said the nine factors, she didn't comply with subsection B. My last point is that someone can be neglected and not involved in the child welfare system, and that's just one example that illustrates why it was important to consider all of the factors here in the 12-factor statute. This resulted in a sentencing hearing where all of the mitigation wasn't considered and denied Angelo of a fair sentencing hearing. Thank you. Thank you, Ms. McLean and Ms. McGowan. We appreciate your excellence. You both did an excellent job arguing your case. You did well, so thank you. Have a good day. Thank you. This is adjourned.